**8NITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES** | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 13-cr-10073-DJC |
| **GILBERTO ECHEVARRIA,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                             **January 18, 2021**

**I.      Introduction**

On June 30, 2015, Petitioner Gilberto Echevarria ("Echevarria") filed a petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2255 based upon alleged ineffective assistance of his counsel in connection with his guilty plea and sentencing. D. 63. On August 9, 2018, this Court denied the Petition. D. 104. This Court also denied a certificate of appealability as to the claims raised in the Petition. D. 112. Echevarria appealed the decision to the First Circuit. D. 105. The First Circuit allowed a certificate of appealability only as to Echevarria's claim as to this Court's denial of an evidentiary hearing on whether his counsel's failure to file a notice of appeal constituted ineffective assistance of counsel. D. 114; D. 122 at 4. Expressing "no view as to the merits of the claim," the First Circuit remanded to this Court for an evidentiary hearing on this issue. D. 114.

Accordingly, on January 23, 2020, this Court held an evidentiary hearing during which both Echevarria and John Cunha, Echevarria's former counsel, testified. D. 118, 122 (transcript

of 1/23/20 hearing).  The Court took the matter under advisement.  D. 118.  For the following reasons, the Court DENIES the remaining claim of the Petition.

**II.     Discussion**

    **A.     Standard of Review**

Pursuant to 28 U.S.C. § 2255, an individual may move to vacate his sentence if such "sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack."  David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)).  "To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, [the petitioner] must show both deficient performance by counsel and resulting prejudice."  Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010).  "[T]o satisfy the 'deficient performance' prong, [the petitioner] must show that his trial counsel's representation 'fell below an objective standard of reasonableness.'"  Id. (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984).  "In order to satisfy the 'prejudice' prong, [a petitioner] must establish that 'but for his counsel's deficiency, there is a reasonable probability that he would have received a different sentence.'"  Id. (quoting Porter v. McCollum, 558 U.S. 30, 40 (2009)).  Only a "reasonable probability" that is "sufficient to undermine confidence in the outcome" will satisfy the prejudice prong.  Strickland, 466 U.S. at 694.  Accordingly, "not all errors by counsel are sufficient to meet the standard of a reasonable probability that, but for the counsel's errors, the result of the proceeding would have been different."  Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 693-94).  It is well settled that the prejudice prong is a "highly demanding" and "heavy burden" for a petitioner to satisfy.  Id. at 15 (internal citation omitted).

**B.     There was No Deficient Performance by Echevarria's counsel**

Having considered the record before the Court, including the evidence presented at the evidentiary hearing, the Court does not conclude that the trial counsel's not filing a notice of appeal was deficient performance where this Court finds that Echevarria never requested that attorney Cunha do so.

Cunha was appointed to represent Echevarria and did so from arraignment through sentencing. D. 122 at 5-6, 24. Echevarria was charged with multiple counts of being a felon in possession of a firearm and/or ammunition in violation of 18 U.S.C. § 922(g)(1) (Counts I-III) and multiple counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (Counts IV-X). D. 3. Echevarria pled guilty to these charges. D. 122 at 6, 34. On April 2, 2014, the Court sentenced him to 120 months imprisonment, three years supervised release and a $1,000 mandatory special assessment. D. 51; D. 122 at 6. Echevarria was unhappy with his sentence, D. 122 at 6, even as the government had recommended that the Court impose a sentence of 151 months, which was at the low-end of the advisory GSR. D. 51-1 at 4-5; D. 51 at 8. Echevarria testified that he spoke with Cunha right after his sentencing in the lockup and asked him to appeal his case. D. 122 at 6-7, 9, 13-14. Echevarria claims that Cunha responded that it was "a waste of time" and a "[w]aste of the government's money." D. 122 at 7, 9-10, 14. He understood that Cunha was advising him that he had little to no chance of success on appeal. D. 122 at 14. Echevarria claimed that he still wanted to appeal, despite this advice, and told attorney Cunha that he wanted to file an appeal. D. 122 at 10, 21. He, however, made no such claim in his earlier affidavit, dated June 26, 2015, D. 63 at 7-9, in which he attested only that his counsel "was aware of my disappointment in the outcome of the sentencing hearing and that I wanted to appeal it," id. at 8 but said nothing about asking Cunha to file same.

After the post-sentencing discussion, Echevarria said that he thought that Cunha was going to file an appeal for him. D. 122 at 7. After that conversation, Echevarria was transferred out of Massachusetts to begin serving his sentence in BOP facilities. D. 122 at 7-8. Through the BOP message system, CorrLinks, Echevarria testified that he tried to reach Cunha five to six times. D. 122 at 8, 10-12. Although Echevarria claims that he had hard copies of these messages at some point and later tried to get copies of the messages from CorrLinks, D. 122 at 12-13, none have been produced in support of this claim. Echevarria claims that he did not hear back from Cunha even with his multiple messages until he had contacted the Board of Bar Overseers ("BBO"). D. 122 at 8-9.

Cunha, an attorney in practice for over forty-three years, D. 122 at 24, who has served as a criminal defense attorney for most of those years, D. 122 at 24-25, 46, also testified at the hearing. He testified that he discussed an appeal with Echevarria (who had prior experience in state court, but not in federal court) before he entered a guilty plea. D. 122 at 36. In that conversation, Cunha explained his view of the sentencing guidelines, the consequences of a guilty plea and that the defendant and the government have the right to appeal a sentence in federal court. D. 122 at 36-37. Cunha also recalled speaking with Echevarria in lockup after the sentencing. D. 122 at 37. Echevarria was unhappy with the 120-month sentence that he had received. D. 122 at 37. They discussed appeal then because just having been sentenced, "that was the only real thing that remained," i.e., "whether he was going to appeal." D. 122 at 38, 53. At that time, Cunha told Echevarria that he had a right to appeal his sentence (and the Court had just instructed Echevarria of this right at the end of the sentencing) but, in his view, an appeal was probably not going to be successful. D. 122 at 38, 53-54. Cunha denied saying, as Echevarria claimed, that it would be a waste of time and a waste of the government's money. D. 122 at 38. On April 17, 2014, a day

4

after the Court issued its judgment, D. 51, Cunha sent Echevarria a copy of the judgment and the transcript of the Court's statement of reasons. D. 122 at 38. Cunha did not hear again from Echevarria until July 2014 when he received a message through CorrLinks that Echevarria was trying to contact him. D. 122 at 39-40. The communication through CorrLinks was not a substantive message, but an invitation to login into CorrLinks. D. 122 at 40. Cunha accepted the July 2014 invitation through CorrLinks from Echevarria, D. 122 at 40, but did not think Echevarria sent him any messages after that. D. 122 at 41. Cunha's practice is to print out CorrLinks messages from clients since they are removed after thirty days from the system and he has no messages retained from Echevarria and did not recall receiving any after the July 2014 invitation. D. 122 at 41, 57-58. In March 2015, close to a year after his sentencing, Echevarria sent Cunha a letter indicating that he was upset with his representation and had filed a complaint with the BBO. D. 122 at 41-42. Cunha responded to the letter, asking Echevarria which files he might want from his case file. D. 122 at 41-42. Cunha did not recall receiving a reply to this response. D. 122 at 42. Sometime within the year before the 2020 evidentiary hearing, Cunha received a CorrLinks message that Echevarria had terminated wanting to contact him through CorrLinks. D. 122 at 41. Although it was rare for Cunha to file a notice of appeal in a case resolved by guilty plea, D. 122 at 43-44, he would have done so if Echevarria had requested it. D. 122 at 56.

As Echevarria's counsel argued, whether Cunha's conduct was deficient in not filing a notice of appeal here turns on whether the Court credits Echevarria's account or Cunha's. D. 122 at 64. Such credibility determinations are committed to the determination of the Court. See Rivera-Rivera v. United States, 844 F.3d 367, 373 (1st Cir. 2016). To the extent that Echevarria's and Cunha's accounts differ regarding the client's instructions to counsel, the Court credits Cunha's account, i.e., that Echevarria did not ask him to file a notice of appeal and, therefore, he

did not do so, for a number of reasons. First, the Court can consider whether a witness has made false statements to assess that witness's credibility. See, e.g., Forero-Perdomo, 915 F.2d 1557, 1557 (1st Cir. 1990). Echevarria's sworn affidavit was false in some respects, as he conceded. D. 122 at 17. Those false statements were as to attorney Cunha's conduct, including but not limited to that he "did not present any Sentencing Memorandum" on Echevarria's behalf in this case. D. 63 at 8. Such statement is demonstrably false, D. 45, D. 74-1; D. 122 at 20, 35, 51-52, as he filed both a sentencing memorandum and objections to the Presentence Report ("PSR") on Echevarria's behalf and it was Cunha's practice to send a copy of a sentencing memorandum and objections to his client, D. 122 at 35. Echevarria also claimed in his affidavit that Cunha had not had any meaningful discussions with him about the merits of the government's case or the PSR and "coerced [him] with undue influence" to enter a guilty plea, which having considered the entirety of the record, including the Court's Rule 11 colloquy with Echevarria and the testimony at the evidentiary hearing, D. 122 at 49-51, the Court finds also to be false. At the hearing, Echevarria had to agree on cross examination that attorney Cunha had "fought very zealously" for him at his sentencing. D. 122 at 20.

Second, unlike Echevarria's, Cunha's testimony was consistent with his recounting of their exchange about a notice of appeal in his January 7, 2016 affidavit, closer in time to the April 2014 discussion that the two had right after sentencing. D. 74. In the affidavit, Cunha attested that Echevarria "did not request that I enter an appeal for him; had he done so, I would have complied." D. 74 at 5. He testified in similar substance at the hearing. D. 122 at 56. The same was true as to his account of Echevarria's only CorrLinks contact with him after the sentencing in July 2014, in which he did not ask him to file a notice of appeal. Compare D. 74 at 6 with D. 122 at 40-41, 58. Third, Cunha was candid about his failure to file a notice of appeal when another client asked him

6

to file a notice of appeal and he did not do so. D. 122 at 45, 55, 63 (discussing another defendant). As he explained, and this Court credits, "[i]f [Echevarria] had asked me to file a notice of appeal and I did not, I would be up here saying that." D. 122 at 56.

Finally, although Cunha was handling some other CJA appointments and other cases at the time that he was representing Echevarria, D. 122 at 33-34, (likely a total of ten to twelve, D. 122 at 34, although the exact number of same was uncertain since the docket entries offered by Echevarria's counsel were admittedly overinclusive as they included some cases in which Cunha made a brief appointment as appointed counsel and then was replaced by retained counsel, D. 122 at 33), there is nothing about this record, including the disposition in this case, to suggest that Echevarria received anything other than zealous advocacy from attorney Cunha. D. 122 at 58-59. Although Echevarria remains unhappy with his sentence, such does not amount to deficient performance, particularly when the Court does not credit Echevarria's claim that he asked Cunha to file a notice of appeal on his behalf.

### C. Even Assuming Deficient Performance, there was no Prejudice to Echevarria

As noted in this Court's prior Memorandum and Order, D. 104 at 5-6, even assuming Echevarria had shown that his trial counsel's failure to file a notice of appeal was deficient performance here (which, as discussed above, he has not), he has failed to show any prejudice from such performance. As previously explained, id., Echevarria has failed to show that he had any viable grounds for appeal from his guilty plea and sentence, thirty-one months below the advisory GSR and the government's recommendation, so the failure to file a notice of appeal was not prejudicial where it certainly cannot be said that the result would have been different.

### III. Conclusion and Certificate of Appealability

For the reasons stated above, the Court DENIES the one remaining claim of the Petition. D. 63. A petitioner may receive a certificate of appealability only if he has "made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a showing is made when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Based upon its analysis of the record and the applicable law, this Court does not, at this time, conclude that "reasonable jurists" could debate this Court's conclusion. Id. Accordingly, the Court is not inclined to issue a certificate of appealability but will give Echevarria until February 19, 2021 to file a memorandum explaining if he seeks a certificate of appealability and the basis for same.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge